FILED'09 JUL 29 13:31 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VU M. BUI,

        Plaintiff,

            v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

        Defendant.

Civil No. 08-1279-CL

**Report & Recommendation**

CLARKE, Magistrate Judge.

Plaintiff Vu M. Bui ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim for Social Security Disability Insurance (SSDI) benefits. For the several reasons set forth below, the decision of the Commissioner should be reversed and the matter remanded for further proceedings.

I.      **Background**

Plaintiff alleges disability beginning September 17, 2004, due to degenerative disc disease of the lower back and hypertension. He was 43 years old. (Pl.'s Br. 2.) Plaintiff was born in Vietnam in 1961 and came to the United States in 1977. (Tr. 277; Pl.'s Br. 3.)

Report & Recommendation 1

Defendant asserts that Plaintiff has at least a high school education and is able to communicate in English.  Plaintiff asserts that he did not graduate from high school in Vietnam and only attended through the sixth grade.  He did complete vocational training as a welder in the United States, at Rock Creek School.  (Tr. 276; Pl.'s Br. 3.)  He was a welder for 15 years. (Def.'s Br. 3.)  Plaintiff's literacy and English language abilities are unclear.  (Tr. 276-77; Def.'s Br. 3; Pl.'s Br. 3)  Plaintiff had a laminectomy/discectomy in 1975 and a microdiscectomy in 1991.  (Tr. 17.)

Plaintiff previously filed for disability insurance benefits and supplemental security income on November 8, 2002.  His application was denied initially, upon reconsideration, and by an ALJ decision on September 15, 2004.  Plaintiff filed his current application on January 28, 2005.  (Tr. 13.)  The claims were denied initially on May 13, 2005, and upon reconsideration on July 18, 2005.  Plaintiff timely requested a hearing on June 22, 2006.  (Tr. 13.)

Plaintiff had two hearings related to his 2005 application.  At his first hearing on June 4, 2007, Plaintiff testified, with the assistance of a Vietnamese interpreter, that he has pain in his lower back which travels down into his right foot.  He also has pain on occasion in his elbows and in his neck.  He explained that when he sits, he experiences numbness in his buttocks area and can only tolerate sitting for 15-20 minutes before needing to stand and walk around for up to 30 minutes before he is able to sit again.  He can walk up to 1-2 city blocks before he needs to rest, and he estimated that he can lift up to 10 pounds.  (Tr. 274; Pl.'s Br. 3.)  He spends approximately 2 to 3 hours, twice a day, resting his back.  (Tr. 279.)  Plaintiff takes pain medication to relieve the pain with the only side effect of a sense of hunger.  (Tr. 275; Pl.'s Br. 3.)

Report & Recommendation 2

At this hearing, Plaintiff's counsel requested that Plaintiff have a consultative examination, and the ALJ took this under advisement and concluded the hearing. (Tr. 279.) Dr. Ogisu completed a comprehensive orthopedic exam on July 10, 2007. In his letter to the SSA, he stated his impressions: "[t]he major component of his pain is likely to be discogenic. His last MRI in 06/1995 revealed a large right paracentral disc herniation at L4-L5 with a large fragment in the right lateral recess causing effacement of the nerve root. He has a right L5 radiculopathy. . . . Leg length discrepancy. This may be contributing to mechanical pain in the lumbar area and right sacrolliac joint." (Tr. 248.)

A second, supplemental hearing was held on October 22, 2007. Vocational expert ("VE") Kay Wise testified concerning Plaintiff's past work experience. She testified that Plaintiff's past work as a welder is heavy, skilled work with a SVP of 5, requiring lifting of up to 100 pounds. (Tr. 286-87.)

The ALJ issued her unfavorable decision on January 10, 2008. The Appeals Council denied review on September 17, 2008, making the ALJ's decision the final decision. (Tr. 4.) Plaintiff timely filed this action on October 28, 2008.

## II.    Standards

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court considers the record as a whole and weighs

Report & Recommendation 3

"both the evidence that supports and detracts from the [Commissioner's] conclusion." <u>Martinez</u> <u>v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld.  <u>Sample v.</u> <u>Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence.  <u>Ceguerra v. Sec'y of Health & Human Servs.</u>, 933 F.2d 735, 738 (9th Cir. 1991).  The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." <u>Flake v. Gardner</u>, 399 F.2d 532, 540 (9th Cir. 1968); <u>see also</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).  Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## III.   Commissioner's Decision

The initial burden of proof rests upon the claimant to establish disability.  <u>Howard v.</u> <u>Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

Report & Recommendation 4

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since September 17, 2004, the alleged onset date. (Tr. 15.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that Plaintiff has a severe impairment of history of laminectomy/discectomy with back pain. (Tr. 15.) Accordingly, the inquiry moved to step three.

Step three focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that Plaintiff's impairments, either singly or in combination, were not severe enough to meet, or medically equal to, any of the listed impairments. (Tr. 16.)

In step four, the Commissioner determines whether the claimant has the residual functional capacity (RFC) to perform her "past relevant work." 20 C.F.R. § 404.1560(a). The RFC is based on all relevant evidence in the case record, including the treating physician's

Report & Recommendation 5

medical opinions about what an individual can still do despite impairments. SSR 96-8p at *5.

"Past relevant work" refers to work that "was done within the last 15 years, lasted long enough

for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §

404.1565(a). It does not consider "off-and-on" work during that period. Id. If he can perform

past relevant work, then the Commissioner finds the claimant "not disabled." If the claimant

cannot perform past relevant work, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e),

416.920(e).

> The ALJ found that the Plaintiff has the residual functional capacity
>
> to lift and carry 20 pounds occasionally. He can sit 30 minutes at a time and 6
> hours out of an 8-hour day, stand 30 minutes at a time and 6 hours out of an 8-
> hour day, ad walk 30 minutes at a time and 6 hours out of an 8-hour day. He is
> limited to occasional pushing and pulling with both hands. He is limited to
> occasional operation of foot controls with the right foot and frequent operation of
> foot controls with the left foot. He can occasionally climb, stoop, crouch and
> crawl. He can frequently kneel. He can occasionally operate a motor vehicle. He
> cannot tolerate exposure to vibrations.

(Tr. 16.) Plaintiff has past relevant work experience as a welder, which is heavy exertion work.

(T. 19.) The ALJ found that the Plaintiff cannot perform past relevant work. (Tr. 19.)

In step five, the burden is on the Commissioner to establish that the claimant is capable of

performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20

C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the

claimant is deemed disabled. Here, the ALJ determined that there are jobs that exist in

significant numbers in the national economy that the Plaintiff can perform. (Tr. 19.) She

determined that the Plaintiff was not disabled. (Tr. 20.)

Report & Recommendation 6

**IV.    Discussion**

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and because it is based on the application of improper legal standards. Plaintiff argues that the ALJ erred by:

(1)    Rejecting Plaintiff's testimony without considering the entire record and without providing clear and convincing reasons

(2)    Rejecting the lay witness Mr. Von Nguyen's statements without giving germane reasons

(3)    Improperly determining the Plaintiff's RFC

(4)    Presenting an improper hypothetical to VE

(5)    Relying on the VE whose testimony departed from the Dictionary of Occupational Titles (DOT) without explanation.

**A.    The ALJ Properly Discredited Plaintiff's Testimony**

The Plaintiff argues that the ALJ improperly found his testimony "not entirely credible" and rejected it. (Pl.'s Br. 8.)   In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis of plaintiff's evidence. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); see also Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). First, the ALJ must determine that the claimant has met the threshold test of producing objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. Smolen, 80 F.3d at 1281. There must be no evidence of malingering. Id.

Under the second part of the analysis, the Commissioner analyzes the credibility of the claimant's testimony regarding the severity of claimant's symptoms. Smolen, 80 F.3d at 1281.

Report & Recommendation 7

The Commissioner can reject a claimant's symptom testimony only if he provides clear and convincing reasons for doing so and makes specific findings. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence suggests that the testimony is not credible. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. <u>Cotton,</u> 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

<u>Smolen,</u> 80 F.3d at 1284.

The Ninth Circuit explained that the ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." <u>Lester v. Chater,</u> 81 F.3d 821, 834 (9th Cir. 1995). Once that determination is made, the court defers to the ALJ. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003).

The Ninth Circuit recognizes that a party claiming disability "should not be penalized for

Report & Recommendation 8

attempting to lead [a] normal [life] in the face of [her] limitations." Reddick, 157 F.3d at 722 (omitted cases cited).  "'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'" Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir.1987) (quoting Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981)).  It is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility. Reddick, 157 F.3d at 722.

The ALJ can make a credibility determination based on "unexplained or inadequately explained failure to seek treatment" as well as the claimant's daily activities.  80 F.3d at 1284. "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." Batson v. Barnhart, 359 F.3d 1190, 1195 (9th Cir. 2004).

Not all of the ALJ's reasons for discrediting the Plaintiff must be upheld, as long as there is substantial evidence to support the ALJ's determination.  In Batson v. Barnhart, the ALJ's determination was upheld even though the court found one of his reasons for his credibility determination to be unsupported.  359 F.3d 1190, 1197 (9th Cir. 2004).  The ALJ had also found contradictions within the Plaintiff's testimony and that the testimony was unsupported by objective evidence or persuasive reports from his doctors.  This was sufficient to uphold the credibility determination. The court explained, "[a]ny error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible." Id.

The Plaintiff gives several reasons why the ALJ improperly discredited his testimony.  He

Report & Recommendation 9

argues that the ALJ improperly focused exclusively on medical information; that the ALJ did not articulate what portions of testimony should be credited; that the ALJ did not offer legitimate reasons for rejecting Plaintiff's testimony; that the ALJ failed to credit the Plaintiff's work history, which may have entitled him to substantial credibility; that the ALJ failed to investigate varying symptoms; and lastly, that the ALJ failed to recognize symptoms of pain that go toward his credibility.  (Pl.'s Br. 9-11.)

Defendant argues that "the ALJ's decision followed a logical sequence and established his reasons for rejecting Plaintiff's testimony based on his analysis of the entire record." (Def.'s Br. 12.)  He argues that the Plaintiff seeks "a more favorable interpretation of the evidence" but "when the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld." (Def.'s Br. 12.)

The ALJ's decision to discredit Plaintiff's testimony is supported by substantial evidence. The ALJ may discredit testimony that contradicts the medical record.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

In addition, the court has also allowed evidence of effective pain management as support for an adverse credibility finding.  In Tommasetti v. Astrue, the court found that the ALJ made a permissible inference that the claimant's pain was not "as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or

more-tailored treatment program . . . ." 533 F.3d 1035, 1039-40 (9th Cir. 2008.) The court further explained that the claimant had responded favorably to conservative treatment and "[s]uch a response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain." Id. at 1040.

Here, the ALJ articulated specific reasons for discrediting the testimony upon a full review of the record. She appropriately considered the Plaintiff's medication and treatment in her credibility determination. See Smolen, 80 F.3d at 1284. The ALJ noted that the Plaintiff's back pain was well-controlled with medication and at times Plaintiff reported a stable condition. (Tr. 18.) Given the evidence, it was a permissible inference for the ALJ to conclude that Plaintiff's pain was not all-disabling. See Tommasetti, 533 F.3d at 1039-40.

The ALJ did sufficiently identify what portions of the testimony she discredited, specifically noting Plaintiff's need to lie down and his assertions regarding the intensity, persistence, and limiting effects of his pain. (Tr. 18.) The ALJ did not find that the treatment records showing Plaintiff's manageable pain to be consistent with these assertions. (Tr. 18.)

She also noted that there were contradictions in Plaintiff's testimony and his statements to doctors. See Smolen, 80 F.3d at 1284. The ALJ noted that although the Plaintiff complained of limiting pain, Plaintiff "denied back pain, joint pain, joint swelling, muscle cramps, muscles spasms, or stiffness" in a January 2006 medical exam with Dr. Pham. (Tr. 18; 223.)

While the ALJ may have provided more reasons, what the ALJ did provide is sufficient. When the evidence is susceptible to more than one rational interpretation, the Court defers to the Commissioner. Tommasetti, 533 F.3d at 1038. The Plaintiff has not shown that the ALJ made legal error in determining his credibility.

Report & Recommendation 11

**B.      The ALJ Properly Discredited Lay Witness Mr. Von Nguyen's Testimony**

Plaintiff argues that the ALJ improperly discredited lay witness Mr. Von Nguyen.  (Pl.'s

Br. 12.)  The Commissioner will consider non-medical sources to evaluate the severity of the

impairment, such as testimony from spouses and other family members.  20 C.F.R. §

404.1513(d)(4).  In <u>Sprague v. Bowen</u>, the court found that testimony of claimant's daughter and

friend is fully competent to substantiate the doctor's diagnosis.  The court concluded, "[d]isregard

of this evidence violates the Secretary's regulation that he will consider observations by non-

medical sources as to how an impairment affects a claimant's ability to work. . . . Descriptions by

friends and family members in a position to observe a claimant's symptoms and daily activities

have routinely been treated as competent evidence." 812 F.2d 1226, 1232 (9th Cir. 1987) (<u>citing</u>

20 C.F.R. § 404.1513(e)(2)).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take

into account, unless he or she expressly determines to disregard such testimony and gives reasons

germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001) (<u>citing</u>

<u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir.1996)).  In considering lay witness opinions, "it

would be appropriate to consider such factors as the nature and extent of the relationship,

whether the evidence is consistent with other evidence, and any other factors that tend to support

or refute the evidence."  SSR 06-03p at *6.

In <u>Greger v. Barnhart</u>, the court affirmed the ALJ's decision to reject lay witness

testimony.  The ALJ concluded that the witness statements were inconsistent with claimant's

presentations to his doctors and noted the witness's "close relationship," which may have

influenced her desire to help the claimant. The court concluded, "[t]he ALJ's reasons for doubting

[the witness's] credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony." 464 F.3d 968, 972 (9th Cir. 2006).

However, the court in <u>Dodrill v. Shalala</u> clarified that lay witness testimony has its place in the ALJ's decision when the witness can provide independent observations:

> [t]hat the ALJ dismissed all the lay witness testimony solely because he found that the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms. . . . An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight. If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.

12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ concluded that the witness statement of Mr. Nguyen was not entirely credible in light of the record. (Tr. 18.) The Plaintiff argues that the ALJ failed to provide specific and germane reasons to discredit this witness. (Pl.'s Br. 12.) The Court disagrees.

The ALJ properly considered whether the statement was consistent with other evidence in the medical record. According to Mr. Nguyen who completed his witness statement on May 7, 2007, the Plaintiff is unable to do chores due to back pain, needs to lie down to relieve the pain, is forgetful, loses focus, and cannot sit or stand for long periods of time. (Tr. 18, 149-55.)

The ALJ properly rejected this testimony by explaining how it was inconsistent with the record. She explained, "[t]here is no evidence of memory problems or difficulties with focus in the treatment record." (Tr. 18.) There was also no medical evidence to support Plaintiff's need to lie down during the day. (Tr. 18.) Further, Dr. Ogisu's record contradicts portions of the statement. Dr. Ogisu noted that the Plaintiff reported to him that he did not need help with

Report & Recommendation 13

routine activities. (Tr. 247.) It was not unreasonable for the ALJ to view this evidence as a contradiction of Mr. Nguyen's statement.

The ALJ provided specific and germane reasons to reject Mr. Nguyen's testimony. Her decision that his statement is "not entirely credible" is not improper.

## C.    The ALJ Properly Determined Plaintiff's RFC

The Plaintiff asserts that the ALJ improperly determined the Plaintiff's RFC by ignoring the mandatory requirements set forth in the regulations. The RFC is defined as "what an individual can still do despite his or her limitations" on a regular and continuing basis. SSR 96-8p at *2. "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities," and the ALJ may only "consider limitations attributable to medically determinable impairments." Id.

Here, as noted previously, the ALJ found that the Plaintiff has the residual functional capacity

> to lift and carry 20 pounds occasionally. He can sit 30 minutes at a time and 6 hours out of an 8-hour day, stand 30 minutes at a time and 6 hours out of an 8-hour day, and walk 30 minutes at a time and 6 hours out of an 8-hour day. He is limited to occasional pushing and pulling with both hands. He is limited to occasional operation of foot controls with the right foot and frequent operation of foot controls with the left foot. He can occasionally climb, stoop, crouch and crawl. He can frequently kneel. He can occasionally operate a motor vehicle. He cannot tolerate exposure to vibrations.

(Tr. 16.)

The Plaintiff argues that the ALJ's RFC is incorrect because she failed to make a literacy

Report & Recommendation 14

finding, did not request an updated MRI, did not order a mental functioning evaluation, and improperly rejected Dr. Vu's testimony. (Pl.'s Br. 13-16.)   The Court disagrees.  The ALJ properly determined the Plaintiff's RFC.

First, Plaintiff's literacy is an educational factor and not a medically determinable impairment.  In Silveira v. Apfel, the Ninth Circuit explained, "[t]he Commissioner has the burden to show that the claimant can perform other work existing in the national economy, 'given his residual functional capacity, age, education, and work experience.' Because literacy, or education level, is relevant only to this latter inquiry and not to the existence of a disability, on which the claimant bears the burden of proof, it follows that the Commissioner bears the burden of establishing this factor." 204 F.3d 1257, 1262, fn.14 (citing Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1987)). "[E]ducation also includes how well you are able to communicate in English." 20 C.F.R. § 404.1564(b).  Thus, it is not appropriate to consider Plaintiff's literacy in his RFC, but this issue will be addressed when the Court considers alleged errors in the ALJ's step five analysis.

Second, the ALJ met her duty to develop the record, even in the absence of a more recent MRI or a mental functioning evaluation.  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)).  "The claimant bears the burden of proving that [he] is disabled.  An ALJ is required to recontact the doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (internal citations omitted).

Report & Recommendation 15

Failure to order a new MRI was not a breach of the ALJ's duty. The ALJ did order a consultative evaluation, upon the request of Plaintiff's counsel, to gather more evidence regarding Plaintiff's back pain. (Tr. 279-80.) Existing evidence included an MRI from 1995. Dr. Ogisu evaluated the Plaintiff, reviewing his medical records, and did not recommend a new MRI. (Tr. 246.) It was not unreasonable for the ALJ to rely on Dr. Ogisu's expertise and judgment in evaluating the 1995 MRI.

The ALJ did not have a duty to further develop the record on the issue of Plaintiff's mental functioning either, as the ALJ properly found that the record was adequate. The Plaintiff argues that the record on Plaintiff's mental functioning is incomplete and should be further developed. He points to lay witness Mr. Nguyen who testified that the Plaintiff forgets things and cannot stay focused and to Plaintiff's testimony that he is sad and forgetful. (Tr. 109; 150; Pl.'s Br. 15.) However, the ALJ properly discredited Mr. Nguyen's testimony and found the Plaintiff not entirely credible. (Tr. 17-18.) Thus there was no evidence to trigger additional action of the ALJ on the issue of mental functioning.

Lastly, the Plaintiff argues that the RFC is inaccurate because the ALJ did not incorporate Dr. Vu's opinion. "The ALJ's RFC findings are deficient because the ALJ improperly rejected the findings of treating physician, Dr. Vu, that Plaintiff would need to work at a reduced pace." (Pl.'s Br. 15.) The Defendant asserts that the ALJ properly rejected this testimony.

Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "The

Report & Recommendation 16

treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and lastly making findings. Cotton, 799 F.2d at 1408; Rodriguez, 876 F.2d at 762.

"The ALJ is responsible for resolving conflicts in medical testimony and resolving ambiguity." Morgan v. Comm'r of Social Security Admin., 169 F.3d 595, 603 (9th Cir. 1999) (citing Andrews v.Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Magallanes v. Bowen, 881 (F.2d 747, 751, 755 (9th Cir. 1989). It is incumbent upon the ALJ to determine when there are inconsistencies in the record and when they are material as well as whether certain factors are relevant to discount the opinions of medical professionals. Id.

Here, the ALJ determined that there was an inconsistency in Dr. Vu's statements. The

Report & Recommendation 17

ALJ summarized Dr. Vu's report:

> An C. Vu, M.D., a treating physician, opined the claimant's pain was seldom
> severe enough to interfere with attention and concentration and he had no side
> effects of medications which would have implications for working. He opined the
> claimant would not experience difficulty with stamina, pain or fatigue if he was
> working full time at light or sedentary exertion levels but he also opined the
> claimant would need to work at a reduced pace at a light or sedentary exertion
> levels.

(Tr. 17.)  Dr. Vu also noted that Plaintiff would need a physical capacity evaluation to address

questions regarding functional limitations. (Tr. 180.)

The ALJ gave Dr. Vu's opinion concerning Plaintiff's reduced pace "little weight" because

it was inconsistent with Dr. Vu's previous conclusion that the Plaintiff would not experience

difficulty with stamina, pain or fatigue. (Tr. 17.) The ALJ explained that little weight was given

because she did not find that Dr. Vu gave a good reason for this limitation, especially since he

"indicated the Plaintiff had exhibited no sensory loss, reflex changes, tenderness, crepitus,

swelling, muscle spasm, muscle weakness, or gait disturbances." (Tr. 17.)

The Plaintiff asserts that "[r]ather than dismiss Dr. Vu's opinion, the ALJ should have

questioned this doctor about the basis of his opinion pursuant to his duty to develop the record, or

ordered a further Consultative Examination." (Pl.'s Br. 15.)  The Court disagrees.

It is the ALJ's responsibility to resolve the inconsistency, and it is within his discretion to

determine if the record is vague and ambiguous to warrant development. See 20 C.F.R. §

404.1512(e); Mayes, 276 F.3d at 459-60. The Plaintiff has not convincingly shown that the ALJ

breached her duty to develop the record or that she improperly gave little weight to Dr. Vu's

opinion. The ALJ's RFC was not in error.

Report & Recommendation 18

**D.    The ALJ Erred in Her Hypothetical to the Vocational Expert**

The Plaintiff argues that ALJ's step five finding was based upon a defective hypothetical

and thus the ALJ's findings are unsupported by evidence. (Pl.'s Br. 16.)   Plaintiff argues that the

RFC was inaccurate and that the ALJ also failed to evaluate Plaintiff's ability to read and write.

(Pl.'s Br. 16.)  The Court has previously determined that the RFC was not inaccurate, and thus the

remaining issue is whether the ALJ properly considered the Plaintiff's education, especially how

it describes Plaintiff's literacy.

The ALJ may rely on the testimony of a vocational expert that is elicited with a

hypothetical question that sets forth all the limitations of the claimant.  Andrews v. Shalala, 53

F.3d 1035, 1043 (9th Cir. 1995).  The assumptions in the hypothetical question must be

supported by substantial evidence.  Id.  The ALJ may not incorporate limitations or restrictions

that are not supported by the record.  SSR 96-8p at *2.  A hypothetical which fails to include all

of a claimant's limitations does not constitute substantial evidence.  Magallanes v. Bowen, 881

F.2d 747, 756 (9th Cir. 1989).  The hypothetical must precisely and comprehensively set out

every physical and mental impairment of the applicant that the ALJ accepts as true.  "Substantial

evidence may be produced through reliance on the testimony of a vocational expert in response to

a 'hypothetical question' but only 'if the question accurately portrays the [plaintiff's] individual

physical and mental impairments."  Varley v. Sec'y of Health & Human Servs., 820 F.2d 777,

779 (6th Cir. 1987) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3rd Cir. 1984).

At step five, the ALJ must determine whether the claimant is able to do any other work

considering his residual functional capacity, age, education, and work experience.  20 C.F.R. §

404.1520(e).  The ALJ may use one of five categories in determining a claimant's education

Report & Recommendation 19

level: illiteracy to include the inability to read or write; marginal education to include ability in

reasoning, arithmetic, and language skills necessary to do simply, unskilled type of jobs; limited

education to include the ability in reasoning, arithmetic, and language skills necessary to allow a

person to do most of the complex job duties needed in semi-skilled or skilled jobs; high school

education and above includes ability in reasoning, arithmetic, and language acquired through

formal schooling at a 12th grade level or above; and inability to communicate in English. 20

C.F.R. § 404.1564(b)(1)-(5). The regulations note,

> Since the ability to speak, read, and understand English is generally learned or
> increased at school, we may consider this an educational factor. Because English
> is the dominant language of the country, it may be difficult for someone who
> doesn't speak and understand English to do a job, regardless of the amount of
> education the person may have in another language. Therefore, we consider a
> person's ability to communicate in English when we evaluate what work, if any,
> he or she can do. It generally doesn't matter what other language a person may be
> fluent in.

20 C.F.R. § 404.1564(b)(5).

Plaintiff argues that the hypothetical failed to address Plaintiff's language abilities and

education. "[T]he ALJ's reference to 'limited English skills' provides little, if any guidance to the

VE when assessing whether plaintiff can perform the reading and writing required for the jobs

identified." (Pl.'s Reply 5.)

The Defendant argues that Plaintiff's language skills were discussed with the VE at the

hearing even though Plaintiff's language skills were not elucidated in the RFC. "Thus, even

though the ALJ neglected to include the restriction of 'limited English' in Plaintiff's RFC in his

written decision, this omission was harmless error as the hypothetical question, which was more

restrictive than the RFC, contained that limitation." (Def.'s Br. 14-15.)

Report & Recommendation 20

The ALJ did not properly evaluate the Plaintiff's ability to perform work in the national economy at step five because she did not use the appropriate education level to describe the Plaintiff's skills. The hypothetical presented to the VE was thus in error and the ALJ's decision is not based on substantial evidence.

Here, the ALJ stated that the Plaintiff had "limited English skills" and the VE assumed that the Plaintiff had 13 years of education, equivalent to a high school education. (Tr. 287-88.) The record, however, does not provide evidence to support this. Plaintiff testified that he had only completed sixth grade in Vietnam before emigrating to the United States. He then attended some English classes and trained to be a welder. This does not demonstrate that the Plaintiff has the equivalent of a high school education, in both the reading and math skills associated with this level of education. The Plaintiff points out that there is no evidence that Plaintiff has the skills required of two of the jobs the VE testified he could perform, specifically the assembler and table worker which require the individual to recognize the meaning of 2,500 words and read at a rate of 95-120 words per minute. (Pl.'s Reply 5.)  It is also unclear whether Plaintiff has the mathematical abilities to perform these positions.[1]

---

[1]  According to the DOT, Assembler, small products, code 706.684-022, requires a reasoning development of 2, mathematical development of 1, and language development of 1. Table worker, code 739.687-182, requires a reasoning development of 1, mathematical development of 1, and language development of 1.

Reasoning development of 2 refers to ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations.

Reasoning development level of 1 refers to ability to apply commonsense understanding to carry out simple one- or two- step instructions and deal with standardized situations with occasional or no variable in or from these situations encountered on the job.

Mathematical development of 1 refers to ability to add and subtract two digit numbers; multiply and divide by 10's and 100's by 2, 3, 4, 5; perform four basic arithmetic operations with coins as part of a dollar; and perform operations with units such as cup, pint, and quart; inch foot, and yard; and ounce and pound.

Language development of 1 refers to the ability to recognize the meaning of 2,500 words; read at a rate of 95-120 words per minute; compare similarities and differences between words and between series of numbers; print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses; and speak simple

The Plaintiff's ability to read, write and communicate in English is unclear from the record. Plaintiff filed his first application for social security benefits in November 2002, and at the hearing for that application he had no interpreter. (Tr. 13, 288.) However, at the 2007 hearings, he testified with the assistance of an interpreter.

Defendant argues that the ALJ did clarify Plaintiff's abilities when she explained to the VE that the Plaintiff had "limited English skills." However, this statement does not accurately describe his abilities and does not utilize one of the categories the regulations established to describe education.

The ALJ's hypothetical did not set forth all of Plaintiff's limitations, and the VE's determination of jobs that Plaintiff can perform is thus in error. The ALJ's decision that the Plaintiff can perform work in the national economy is not based on substantial evidence and is in error. The case should be remanded to step five where the ALJ should determine the Plaintiff's education level and include it in her hypothetical to the VE.

### E.   The VE Erred in Departing from the DOT Without Explanation

Plaintiff argues that the positions the VE testified the Plaintiff can perform are not consistent with his abilities. (Pl.'s Br. 17.) A "reasonable explanation" is necessary when there is an apparent unresolved conflict between VE's evidence and the DOT. SSR 00-4p at *2. The ALJ may rely on the VE's testimony when it contradicts the DOT but only "insofar as the record contains persuasive evidence to support the deviation." Light v. Social Security Administration, 119 F.3d 789, 793 (1997).

Here, the Plaintiff argues that both positions of assembler and table worker require

---

sentences using normal word order, and present and past tenses. DOT, App. C.

Report & Recommendation 22

abilities that exceed the Plaintiff's. Both positions exceed Plaintiff's education, as he argues he is illiterate. The position of assembler requires frequent lifting of up to 10 pounds, but the ALJ's RFC only permits Plaintiff to lift 10 pounds occasionally. (Tr. 16.)

There is an apparent conflict between the assembler position requirements and the Plaintiff's RFC and, potentially, between both positions of assembler and table worker and the Plaintiff's education. There was no reasonable explanation, and as such, the ALJ's reliance on this testimony is in error and is not substantial evidence. When the matter is remanded to correct the hypothetical, the ALJ should be sure to solicit an explanation in the event that the positions are in conflict with the Plaintiff's abilities.

**V.    Conclusion**

This decision should be reversed and remanded. The ALJ's decision is not based on substantial evidence or correct legal standards. The ALJ failed to provide an accurate hypothetical to the VE that properly described the Plaintiff's education. Further, when the positions suggested by the VE as positions available in the national economy conflicted with the Plaintiff's abilities, the ALJ failed to solicit a reasonable explanation. The ALJ did not err in her credibility determinations of the Plaintiff or lay witness Mr. Nguyen. The RFC determination was not improper.

**VI.    Recommendation**

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and the matter remanded for further administrative proceedings. The ALJ should determine the Plaintiff's education level and provide a proper hypothetical to the VE. If the VE's positions are in conflict with the Plaintiff's

Report & Recommendation 23

abilities, the ALJ should require a reasonable explanation.

    *This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

    The Report and Recommendation will be referred to a district judge.  *Objections to this Report and Recommendation, if any, are due by August 17, 2009.  If objections are filed, any responses to the objections are due within 10 days, see* Federal Rules of Civil Procedure 72 and 6.  If no objections are filed, then the Report and Recommendation will go under advisement on that date.

    Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _29_ day of July, 2009.



            MARK D. CLARKE

           United States Magistrate Judge

Report & Recommendation 24